UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PAUL COLON,

                Petitioner,

- against -

ROBERT ERCOLE,

                Respondent.

---

**REPORT AND RECOMMENDATION**

**09 Civ. 746 (GBD) (RLE)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

**To the HONORABLE GEORGE B. DANIELS, U.S.D.J.:**

## I. INTRODUCTION

*Pro se* Petitioner Paul Colon, a New York state prisoner at Attica Correctional Facility, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The *Pro Se* Office in this District received the Petition on December 11, 2008. On October 16, 2003, Colon was convicted in Bronx County of assault in the first degree (N.Y. Penal Law § 120.10(1)) after a jury trial and sentenced to seventeen years in prison. Additionally, on April 5, 2004, Colon pled guilty to attempted robbery in the first degree (N.Y. Penal Law § 110/160.15(4)), and attempted assault in the first degree (N.Y. Penal Law § 110/120.20(1)). He was sentenced to two determinate terms of incarceration of six years, to run concurrently with each other and with the seventeen-year term.

Colon contends that his incarceration violates the United States Constitution because (1) the identification procedures employed by the police and admitted at trial were tainted and suggestive, in violation of his right against unlawful arrest and his right to due process; (2) he was deprived of the right to confront his accusers and to a fair trial; and (3) there was

prosecutorial misconduct during opening remarks and summation, which violated his right to a fair trial and his right to due process. (Pet. under 28 U.S.C. § 2254 ("Pet.") at ¶ 12.) For the reasons set forth below, I recommend that the petition be **DENIED.**

## II. BACKGROUND

A.  **Factual Background**

1.  **The Crime**

On November 9, 2001, Colon went to Al's Mr. Wedge strip bar located at 673 Hunts Point Avenue in the Bronx. Adriano Mendes, who was collecting a five-dollar cover charge from entering patrons, recognized Colon as a regular at a nearby bodega that Mendes passed on his route to work several times a week. (Trial Transcript ("Tr.") at 476.) Mendes informed Colon that the strip bar was not serving alcohol because it had lost its liquor license. (Tr. at 465.) Colon appeared intoxicated, but was allowed to enter after he paid the cover charge. (*Id.*)

Bartender Judelka Guadalope recognized Colon as a regular at the bar. (Tr. at 383.) She observed him instigating arguments with other bartenders, so she called him over to inquire whether there was a problem. (*Id.*) Colon appeared drunk, and informed her that Mendes had given him a hard time entering the bar. (Tr. at 384.) Later, a dancer approached Colon and began dancing for him, but he started arguing with her, called her unattractive, and refused to tip her. (Tr. at 385.) Shortly thereafter, Colon walked out of the strip bar, and demanded his cover charge back from Mendes. (Tr. at 470.) When Mendes explained that Colon would not be reimbursed because he had spent a half hour inside, Colon began demanding cover charges from patrons attempting to enter the bar. (Tr. at 470-71.) Mendes tried to stop him, and turned his back to Colon to call security. (Tr. at 471.) When Mendes turned back around, Colon slashed his face

with a sharp object and fled. The gash on Mendes's face spanned from his left ear to his lip, and consisted of a deep nine-centimeter laceration that required multiple sutures. (Tr. at 471, 608.)

2. **Identification**

On November 11, 2001, an unidentified worker at the bodega near the strip bar gave Colon's name to Mendes. (Tr. at 485.) Mendes went to the 41st Precinct the next day, and told Detective Roger Monaco that his assailant was named Paul Colon. (*Wade* Hearing Transcript ("Hr.") at 166-69.) Detective Monaco entered the name "Paul Colon" into a database and also entered "male Hispanic." (Hr. at 169.) The search resulted in twelve photos, which Detective Monaco assembled into a photographic array - nameless pictures on two different pages. (*Id.*) Detective Monaco asked Mendes to look at the six pictures on the first page to see if he recognized his assailant. Mendes identified Colon's picture as his assailant. (Hr. at 171.) Neither Mendes nor Detective Monaco was aware that three of the six pictures were of Colon from previous arrests. (Hr. at 170.)

On November 18, 2001, at the 43rd Precinct, the victim of an unrelated armed robbery identified Colon from a photographic array as his assailant. (Decl. in Opp'n "Pimentel Decl.," Ex. 4 at 4.) On March 28, 2002, Detective Bencivengo from the 43rd Precinct, who had been assigned to investigate the armed robbery, received information that a detective in the Bronx had apprehended Colon. (*Id.* at 5.) Also on that day, Detective Dawson of the 41st Precinct, now investigating the Mendes slashing, was informed that Colon had been apprehended. (*Id.* at 5.)

Detective Dawson called Mendes and asked him to come in for a line-up identification because he "had the person that cut his face." (Hr. at 16.) Dawson and Bencivengo then conducted a line-up identification with Colon and four "fillers." (*Id.*) Mendes and the victim of

3

the armed robbery each separately identified Colon as the perpetrator (*id.* at 6), and he was then arrested.

### 3. *Wade/Dunway* Hearing

From September 17 through September 24, 2003, the trial court conducted a *Wade/Dunway* hearing to determine whether the identification was admissible and whether there was probable cause for Colon's arrest. Defense counsel argued that there was no probable cause for the arrest and that the photographic array was unduly suggestive because Colon had a 50% chance of being selected. The court denied Colon's motion (Hr. at 233), finding that four and one-half months between the photographic array and the line-up was a sufficient length of time so as not to taint Mendes's line-up identification. The court also determined that Colon was arrested and detained lawfully, and that the detectives had probable cause to put him in the line-up. (Hearing Decision at 10.)

### 4. Trial

Colon's trial for assault commenced on September 24, 2003. Guadalope, the bartender, testified that on November 9, 2001, a man she recognized as a regular customer arrived at the strip bar, appeared drunk, and was bothering the bartenders. (Tr. at 383-84.) She identified Colon on the record as the man she interacted with the night of the incident. (Tr. at 383.) She described him as wearing a sweater with a hood that night, and testified that she saw him leave the strip bar. (Tr. at 435.) She testified that approximately five minutes later, she heard Mendes call for security. (Tr. at 385.) The club was not dark or noisy enough to prevent her from seeing people's faces or hearing conversations, but the slashing occurred outside, and she did not see it happen. (Tr. at 425.)

4

Mendes identified Colon on the record as the man who slashed him. (Tr. at 466.) Mendes testified that he saw Colon, seemingly intoxicated, arrive at the entrance area of the strip bar wearing a beige hooded jacket. Because the lighting was sufficient and his hood was down, Mendes saw Colon's face and recognized him from a nearby bodega. (Tr. at 472-73.) He testified that Colon paid the cover charge, entered the strip bar, and approximately thirty minutes later, he returned and demanded his money back. (Tr. at 467.) Mendes further testified that Colon refused to leave and pretended to act as an employee, demanding a cover charge from people entering. When Mendes turned his back to call security, he suddenly felt a burning sensation on the left side of his face and saw Colon run away. (Tr. at 464-67.)

Detective Edward Dawson testified about the precinct's line-up and identification procedures. (Tr. at 579, 581.) Dr. Marc Haber gave testimony about the cause and extent of Mendes's injury. (Tr. at 606-09.) Finally, Detective Kenneth Velazquez, Detective Monaco's partner, testified about the photographic array identification procedures. (Tr. at 648.) Colon did not testify. During summation, the prosecutor suggested that the defense could have called witnesses to contradict a certain part of Guadalope's testimony. (Tr. at 747.) The court sustained defense counsel's objection and instructed the jury that the defense had no obligation to call any witnesses. (Tr. at 747-48.) The court also reinforced this point in its final charge to the jury. (Tr. at 793.) The jury convicted Colon of assault in the first degree.

5.   **Sentencing**

Colon was sentenced as a second felony offender to a determinate term of seventeen years. On April 5, 2004, he was convicted of attempted robbery in the first degree (N.Y. Penal Law § 110/160.15(4)), and attempted assault in the first degree. (N.Y. Penal Law § 110.120.20(1)). He was sentenced as a second felony offender to two determinate terms of six

years. The two six-year sentences and the seventeen-year sentence were imposed to run concurrently.

## B. Procedural Background

Colon appealed his first degree assault conviction, which was affirmed by the Appellate Division on April 3, 2007. *People v. Colon*, 39 A.D.3d 233 (1st Dept. 2007). On appeal, Colon raised two claims, arguing that: (1) the results of the line-up were tainted and should have been suppressed; and (2) the prosecutor's inappropriate remarks and introduction of improper testimony deprived Colon of his right to confront witnesses. In rejecting Colon's first claim, the court found that the line-up was not the fruit of an unlawful arrest. *Colon*, 39 A.D.3d at 234. The court held that sufficient evidence established that Colon was detained because of two previous photographic identifications, and not simply because of the line-up. *Id.* Furthermore, the court found that the trial court properly admitted Mendes's line-up and in-court identifications, and reaffirmed that the photographic array did not influence the line-up identification. *Id.*

In rejecting the second claim, the court found that Colon's right to confront witnesses was not violated since the non-testifying declarant was not a witness against Colon. *Id.* The information was not testimony because the jury was never told that the non-testifying declarant who gave Mendes Colon's name knew about the assault or had incriminated Colon for the slashing. *Id.* Therefore, Colon's Confrontation Clause argument was meritless and unpreserved. *Id.* Additionally, the court held that the trial court's curative instruction regarding the prosecution's summation was sufficient to prevent any prejudice. *Id.* at 235. Finally, the court held that Colon's remaining claims regarding misconduct during summation were unpreserved and declined to review them. Moreover, the court held that those claims lacked merit. *Id.* Leave

6

to appeal to the New York Court of Appeals was denied on August 15, 2007. *People v. Colon*, 9 N.Y.3d 874 (2007).

### III. DISCUSSION

#### A. Threshold Issues

##### 1. Timeliness

A petitioner must file an application for a writ of habeas corpus within one year of his conviction becoming final. *See* 28 U.S.C. § 2244(d)(1). A conviction becomes final "'when [the] time to seek direct review in the United States Supreme Court by writ of certiorari expire[s],'" that is, ninety days after the final determination by the state court. *Williams v. Artuz*, 237 F.3d 147, 150 (2d Cir. 2001) (quoting *Ross v. Artuz*, 150 F.3d 97, 98 (2d Cir. 1998)). Colon's application for leave to appeal to the Court of Appeals was denied on August 15, 2007, and thus his conviction became final on November 13, 2007.

On November 10, 2008, Green Haven Correctional Facility library law clerk, inmate Paul Harris, submitted Colon's petition to prison officials for mailing to the Court. This petition, though unsigned by Colon because of his transfer to another prison, was submitted with a letter from Harris explaining the reason for the unperfected petition. (Letter of Paul Harris in Support of Colon's Petition for Writ of Habeas Corpus, November 10, 2008.) The initial petition was received by the *Pro Se* Office on November 18, 2008. Colon then submitted a signed copy of the same petition on December 1, 2008, which was received by the *Pro Se* Office on December 11, 2008, and subsequently filed and docketed.

On March 6, 2009, Respondent filed a pre-answer motion to dismiss Colon's petition, asserting that the petition was untimely and that he should not receive the benefit of the mailbox

7

rule.[1] On August 4, 2009, this Court recommended the motion be denied. After Respondent filed an objection to this Court's report, Judge Daniels affirmed the recommendation on August 26, 2009. *Colon v. Ercole*, 2009 U.S. Dist. LEXIS 75982, at *3 (S.D.N.Y. Aug. 26, 2009).

## 2. Exhaustion

Pursuant to 28 U.S.C. § 2254(b), as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), the Court may not grant a petition for habeas corpus unless the petitioner has exhausted all state judicial remedies. 28 U.S.C. § 2254(b)(1)(A); *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Dorsey v. Kelly*, 112 F.3d 50, 52 (2d Cir. 1997). In order to satisfy exhaustion, a petitioner's claim before the state courts must have been federal or constitutional in nature. Although not an exacting standard, a petitioner must inform the state courts of "both the factual and the legal premises of the claim [he] asserts in federal court." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (quoting *Daye v. Attorney Gen.*, 696 F.2d 186, 191 (2d Cir. 1982) (*en banc*)).

Procedurally, the petitioner must utilize all avenues of appellate review within the state court system before proceeding to federal court. *See Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994). He must raise a federal claim at each level of the state court system, "present[ing] the substance of his federal claims 'to the highest court of the pertinent state.'" *Id.* (quoting *Pesina v. Johnson*, 913 F.2d 53, 54 (2d Cir. 1990). Colon raised his claims at every level of state court review, *People v. Colon*, 9 N.Y.3d 874 (2007), and his claims were federal in nature. Accordingly, his claims have been substantively and procedurally exhausted.

---

[1] The mailbox rule states that the date petitioner gives his petition to prison officials to be mailed is deemed to be the filing date. *Houston v. Lack*, 487 U.S. 266, 274 (1988).

8

### 3. Procedural Bar

A claim is precluded from habeas review if: (1) the state court declined to address petitioner's federal claim because petitioner failed to meet a state procedural requirement, and (2) the state court decision rested on independent and adequate state grounds. *Coleman v. Thompson*, 501 U.S. 722, 729 (1991); *Jones v. Vacco*, 126 F.3d 408, 414-15 (2d Cir. 1997). A state law ground is "adequate" if "the state's insistence on compliance with its procedural rule serves a legitimate state interest." *Wainwright v. Sykes*, 433 U.S. 72, 83 n.8 (1977) (quoting *Henry v. Mississippi*, 379 U.S. 443, 447 (1965)). Further, the adequacy of a procedural rule rests on whether such rule is firmly established and regularly followed in the specific circumstances presented in the case. *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003). The Second Circuit has recognized that New York's preservation rule typically constitutes an independent and adequate state procedural ground on which the Appellate Division may deny a criminal defendant's appeal. *Garcia v. Lewis*, 188 F.3d 71, 76-78 (2d Cir. 1999); *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008).

Colon's first claim was decided by the Appellate Division on the merits and is not procedurally barred. *Colon*, 39 A.D.3d at 233-35. Colon's second claim, that his right to confront witnesses was violated, is procedurally barred. The Appellate Division held that this claim was "unpreserved and without merit." *Colon*, 39 A.D.3d at 234. Since the court based its decision on the preservation rule, this Court is precluded from reviewing Colon's Confrontation Clause claim.

Colon's third claim, that prosecutorial misconduct violated his right to a fair trial, contains various sub-claims, some of which are procedurally barred. Colon raised three prosecutorial misconduct claims in his mistrial motion, thereby preserving them for review by

the Appellate Division and this Court. The following claims are preserved: (1) the prosecutor made a burden shifting remark; (2) the prosecutor impermissibly stated that the person who gave Colon's name to Mendes did not testify because he feared for his life; and (3) the prosecutor requisitioned the jury to send "a message" by returning a guilty verdict. (Pimentel Decl. at 18, n.2.) The other two prosecutorial misconduct claims are procedurally barred because the Appellate Division rejected them on grounds of preservation. *Colon*, 39 A.D.3d at 234-35. The two unpreserved, and procedurally barred, claims are: (1) the prosecutor improperly concluded that Mendes and Guadalope had been referring to the same man based on their testimony; and (2) the prosecutor impermissibly remarked that the photographs in the array were maintained by the police department. (Pimentel Decl. at 18, n.3.)

To overcome a procedural bar, Colon must show: (1) cause for the default and actual prejudice from barring the claim, or (2) a "fundamental miscarriage of justice." *Murray v. Carrier*, 477 U.S. 478, 485-96 (1986); *Spence v. Superintendent*, 219 F.3d 162, 170 (*citing Coleman*, 501 U.S. at 749-50). Colon has failed to allege, and the Court cannot ascertain, any facts or arguments which would show cause for failure to preserve the claim, show resulting prejudice, or show that a fundamental miscarriage of justice would occur without review of the claims. Accordingly, since Colon has not met his burden, his second claim, based on the Confrontation Clause, is procedurally barred. For the same reason, Colon's two unpreserved prosecutorial misconduct claims are also procedurally barred.

## B. Merits of the Claims

### 1. Standard of Review

AEDPA constrains a federal habeas court's ability to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. The

Act limits issuance of the writ to circumstances in which the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *see Williams v. Taylor*, 529 U.S. 362, 412 (2000). A state court decision is contrary to federal law if the state court applies "a conclusion opposite to that reached by [the Supreme] Court on a set of materially indistinguishable facts." *Id.* at 413. Furthermore, in cases where the state court decision rests on a factual determination, the federal court must find that the "decision . . . was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

2.  **Colon was Properly Arrested**

Colon contends that the tainted identification procedures employed by the police violated his right to due process and his right to be free from unlawful arrest.

a. The Identification Procedure was Not Tainted or Suggestive

Colon contests the legality of the identification method employed to arrest him, claiming the procedure was unduly suggestive and violated his right to due process. (Pet. at ¶ 12(a).) The standard for court proceedings and identifications are governed by fairness, as required by the Due Process Clause. Pretrial identification by a witness is admissible as long as it is not so unreliable as to raise "a very substantial likelihood of irreparable misidentification." *Mason v. Brathwaite*, 432 U.S. 98, 106 n.8 (1997) (*quoting Simmons v. United States*, 390 U.S. 377, 384 (1986)). If the procedures are found to be unnecessarily suggestive, a court must look at the totality of the circumstances and determine whether the identification testimony is nevertheless admissible because it is "independently reliable rather than the product of the earlier suggestive

11

procedures." *United States v. Maldonado-Rivera*, 922 F.2d 934, 973 (2d Cir. 1990); *see also Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001).

Colon argues that the trial court erred in admitting the identification into evidence because the police lacked probable cause to initially detain him. (Pimentel Decl., Ex. 3 at 40.) Respondent maintains that the evidence was properly admitted and did not violate due process because the identification procedure was independently reliable. The Court finds that Mendes had sufficient opportunities to view and interact with Colon, which provided him with a reasonable background from which to independently identify Colon. The night of the incident, Mendes had a relatively lengthy interaction with Colon before he entered the strip bar, during which he was able to study Colon's face while talking to him. Furthermore, Mendes also recognized Colon as the man who frequented the neighborhood bodega. (Tr. at 474.) Finally, nothing in the record indicates that Mendes was unsure of his identification, or that there was any hesitation by Mendes from which the Court can infer reliance on a suggestive identification procedure. (*See, e.g.*, Hr. at 200.) Accordingly, this claim lacks merit and should be **DENIED**.

b. Colon's Claim That His Arrest Lacked Probable Cause is Non-Cognizable

Colon contends that there was no probable cause to arrest him. (Pet. at ¶ 12(a).) The Fourth Amendment has been interpreted to protect citizens against arrests without probable cause. Probable cause exists when an officer has knowledge of facts and circumstances sufficient to support a reasonable belief that an offense has been committed. *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).

Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the grounds that evidence obtained in an unconstitutional search or

12

seizure was introduced at his trial. *Stone v. Powell*, 428 U.S. 465, 481-82 (1976). Where the petitioner has had fair and full opportunity to litigate the issue in state court, he is precluded from receiving review regardless of the type of evidence in question. *See Cardwell v. Taylor*, 461 U.S. 571, 572 (1983); *Chavis v. Henderson*, 638 F.2d 534, 538 (2d Cir. 1980).

Here, both the trial court and Appellate Division held that probable cause existed for the arrest. The Court agrees. Detective Bencivengo apprehended Colon for the robbery based on probable cause created by identifying information supplied by the complaining witness. (*See* Hr. at 39-49.) After he became aware that Colon was also wanted for the Mendes slashing, he informed Detective Dawson, who subsequently brought Mendes in for an identification, which provided probable cause for Colon's arrest for the slashing. Furthermore, Colon had the opportunity to question the legality of his arrest and identification procedure fully in state court through his Wade/Dunway hearings, his trial, and motions. Accordingly, this claim is meritless and should be **DENIED.**

### 3. Colon was Not Deprived of his Right to Confront Witnesses

Colon argues that he was deprived of a fair trial because he was unable to confront his accuser. (Pet. at ¶ 12(b).) The Sixth Amendment guarantees the accused the right to confront witnesses testifying against him. The Confrontation Clause bars the admission of out-of-court "testimonial" statements unless the declarant was unavailable and the petitioner had a prior opportunity to cross-examine the declarant with respect to the statement. *See Crawford v. Washington*, 541 U.S. 36, 59 (2004). The Supreme Court defined "testimony" as a "solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Crawford*, 541 U.S. at 51. However, there must be at least an implicit statement implicating the petitioner and being offered for its truth in order to have a potential Confrontation Clause violation. *Id.*;

*United States v. McCallum*, 348 Fed. Appx. 693, 696 (2d Cir. 2009); *see United States v. Stewart*, 433 F.3d 273, 291 (2d Cir. 2006). Finally, in determining whether a statement qualifies as testimony, the Supreme Court has found that statements given to a government official may be considered testimony, but statements between civilians or acquaintances are not. *Crawford*, 541 U.S. at 51; *see United States v. Feliz*, 467 F.3d 227, 232-33 (2d Cir. 2006).

Colon asserts that he was unable to confront the unidentified person who provided Mendes with his name. Because he was unable to cross-examine this person, Colon contends that his Sixth and Fourteenth Amendment rights were violated. Respondent maintains that this claim lacks merit because the unidentified declarant's statement does not qualify as testimony for Confrontation Clause purposes. The Court agrees. At trial, the jury was informed that the unnamed declarant was not present during the assault, nor was there any indication that the declarant had any knowledge of the incident. Moreover, there was no degree of implication when the unidentified declarant revealed Colon's name to Mendes. Rather, the unidentified civilian merely informed Mendes of the name of the man that frequented the bodega, an inquiry independent of the incident. The interaction between Mendes and the unidentified source consisted of a non-implicative statement. As such, the identification does not qualify as testimony, and Colon has no grounds to assert a Confrontation Clause claim. Accordingly, Colon's claim lacks merit and should be **DENIED.**

### 4. The Prosecutor's Comments During Opening and Summation were Not Prejudicial

Colon maintains that he is being unlawfully held because the prosecutor's comments at trial prejudiced him and deprived him of his right to a fair trial. (Pet. at ¶ 12(c).) Under the Sixth Amendment, a criminal defendant is entitled to a fair trial by an impartial jury. However, inappropriate prosecutorial comments, standing alone, do not justify a reversal of a criminal

14

conviction obtained in an otherwise fair proceeding. *United States v. Young*, 470 U.S. 1, 11 (1985). Therefore, it "is not enough that a prosecutor's remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). The relevant question is whether the prosecutor's remarks "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). A prosecutor's alleged improper summation will result in a denial of due process only when improper statements cause substantial prejudice to the petitioner. *See United States v. Modica*, 663 F.2d 1173, 1181; *United States v. Bivona*, 487 F.2d 443, 444 (2d. Cir 1973); *United States v. White*, 486 F.2d 204, 205 (2d Cir. 1972), cert. denied, 415 U.S. 980 (1974). To determine substantial prejudice, the court examines the severity of the misconduct, the measures adopted to cure the misconduct, and the certainty of conviction absent the improper statements. *Modica*, 663 F.2d at 1181.

    Colon raised the following preserved prosecutorial misconduct claims in his state court appeal: (1) the prosecutor made a burden shifting remark; (2) the prosecutor impermissibly stated that the person who gave Colon's name to Mendes did not testify because he feared for his life; and (3) the prosecutor called on the jury to send "a message" by returning a guilty verdict. (Pimentel Decl., Ex. 3 at 51-52.) Respondent maintains that Colon's claims are meritless, and argues that the prosecutor's allegedly prejudicial comments were stricken from the record or cured by immediate instructions.

    After a review of the record, the Court finds that the prosecutor's remarks did not infect the trial with any degree of unfairness that prejudiced Colon or deprived him of due process. A curative instruction was issued when the prosecutor noted for the jury that the defense did not call any witnesses or present a case. The trial court immediately instructed the jurors that "the

defense has no obligation to call witnesses" (Tr. at 748), and supplemented the jury charge to reiterate that clarification. (Tr. at 793.) Accordingly, the prosecutor's remark did not shift the burden to the defense. With respect to Colon's other two claims, the trial court immediately directed that the offending remarks be struck from the record and instructed the jury to disregard them. (Tr. at 753, 767.) Any chance for potential prejudice was immediately addressed by the court. Additionally, Colon has not set forth any evidence explaining how the statements prejudiced him. Finally, there was substantial other evidence to support the jury's verdict, including Mendes's testimony and identification. Accordingly, this claim lacks merit and should be **DENIED.**

## IV. CONCLUSION

For the foregoing reasons, I recommend that Paul Colon's petition for a writ of habeas corpus be **DENIED**. Pursuant to Rule 72, Federal Rules of Civil Procedure, the parties shall have fourteen (14) days after being served with a copy of the recommended disposition to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies delivered to the chambers of the Honorable George B. Daniels, 500 Pearl Street, Room 630, and to the chambers of the undersigned, 500 Pearl Street, Room 1970. Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985); *Small v. Sec'y of Health and Human Servs.*, 892 F. 2d 15, 16 (2d Cir. 1989) (*per curiam*); 28 U.S.C. § 636(b)(1) (West Supp. 1995); Fed R. Civ. P. 72, 6(a), 6(d).

Dated: January 31, 2011
New York, New York

Respectfully Submitted,

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**

**Copies of this Report and Recommendation were sent to:**
*Pro Se* Petitioner
Paul Colon
DIN# 03-A-5813
Attica Correctional Facility
639 Exchange Street
Attica, NY 14011

Counsel for Respondent
Alexis Pimentel
District Attorney, Bronx County
198 East 161st Street
Bronx, New York 10451

17